THE CITY COUNCIL OF AUGUSTA *vs.* MURPHEY *et al.*

Where the charter of the city of Augusta contained the following power: The city council "can make every by-law or regulation requisite and necessary for the security and welfare and convenience of said city, and is vested with full power and authority to make such assessments on the inhabitants of Augusta, or those who hold taxable property therein, for the safety, benefit, convenience and advantage of the said city, as shall appear to them expedient"; and an act of the legislature amending such charter contained the following clause: "That all taxes and assessments

made under the ordinances of the city council of Augusta, shall have the same lien and priority as taxes due the State, except that they shall be postponed to the latter":

*Held*, that the taxes and assessments referred to were the general tax and assessments, such as the city was authorized by law to make, and did not authorize the making of local assessments upon property which happened to adjoin that portion of a street where improvements were made. The whole city was made taxable for such improvements, and not merely the individuals whose property was claimed to be benefited thereby.

(*a*) Nor was such local assessment authorized by the act of 1835, which prescribed that the city council should have full power to assess and tax property of every kind and description.

(*b*) Nor were they authorized by the act of 1880, (acts 1880-81, p. 271,) which provides that the board of health shall have full control of the drainage, sewerage, etc. of said city, and that the ordinances of said board (previously mentioned) are given the force and effect of law. It did not matter that the board of health in this case ordered the work to be done, and the city concurred in it and provided for the cost of it by paying a part itself and assessing the balance against the property benefited.

(*c*) Nor was such power conferred by the act of 1874 (acts 1874, p. 205,) nor by the act of 1885 (acts 1884-85, p. 148).

(*d*) It does not appear when the ordinance sought to be enforced was passed; nor is it apparent that the legislature ever intended by any of its general enactments to revolutionize the whole former system of taxation of the city of Augusta by the questionable adoption of such ordinance.

May 9, 1887.

Municipal Corporations. Tax. Laws. Assessments. Before Judge RONEY. Richmond County. At Chambers, March 5, 1887.

Reported in the decision.

JOHN S. DAVIDSON, for plaintiff in error.

HOOK & MONTGOMERY, for defendants.

HALL, Justice.

This was a bill brought to enjoin the collection of assessments made, under an ordinance of the city of Augusta,

upon the property of landed proprietors adjacent to the streets on which such improvements were made. The judge held that no authority was given to the city of Augusta, in any acts of the legislature, to make assessments in this manner. And on the hearing of the case, it was admitted by counsel for the city that there was no express legislative authority enabling them to make such assessments, but he contended that that authority was necessarily implied from certain general expressions contained in the act incorporating the city, and from subsequent enactments of the legislature on the subject.

The city council, under the act of incorporation,

"Can make every by-law or regulation requisite and necessary for the security and welfare and convenience of said city, and is vested with full power and authority to make such assessments on the inhabitants of Augusta, or those who hold taxable property therein, for the safety, benefit, convenience and advantage of the said city, as shall appear to them expedient."

Again, it is insisted that the city is authorized to make assessments under the act of 1847, which is as follows:

"That all taxes and assessments made under the ordinances of the city council of Augusta, shall have the same lien and priority as taxes due the State, except that they shall be postponed to the latter."

Now we take it that the taxes and assessments referred to in these acts, were the general taxes and general assessments, such as the city was authorized by law to make, and not assessments upon property which happened to adjoin that portion of the street where the improvements were made; the whole city was made taxable for these improvements, and not merely the individuals whose property was claimed to be benefited thereby.

Again, it is contended that under the act of 1835, all the tax and assessment ordinances of the city were validated. The 3d section of that act prescribes that the city council shall have full power to assess and tax property of every kind and description. They say furthermore that it was authorized by the act of 1880, (acts 1880-1, p. 271,) which

provides, in sections 5, 6, 10, that the board of health shall have full control of the drainage, sewerage, etc. of said city, and the ordinances of said board, in section 3, are given the force and effect of law.

The board of health, under the powers, it is conceded, ordered this work to be done; the city concurred in it, and provided for the cost of it by paying part itself and assessing the balance against the property benefited. It is contended that the city has the right, under the act of 1874 (acts 1874, p. 205,) to issue executions for all assessments; and that it has also the same authority under the general law (acts 1884–5, p. 148). The ordinance under which the assessments in this case were made, contains the following provision:

"Section 2. It shall be the duty of said board (of assessment and apportionment), whenever council shall order any permanent work of public improvement to be done in any of the streets or thoroughfares of this city—such as paving, curbing or planking, the construction of drains, covered or uncovered, the boxing of trees, the enclosing of groves in the centre of streets, and other works of a similar character,—to examine into and ascertain the amount of property owned in or on the part of such street or thoroughfare as it may be designed to improve, as well as in or on the parts of such streets or thoroughfares immediately adjacent to such improvement, and to assess and apportion the amount to be paid by each property-holder thereon; the whole cost of the work to be fairly and equitably divided among such property-holders as, in the judgment of said board, will be so benefited by the work done or to be done, and according to the assessment and apportionment of said board: Provided, that any person who may consider himself or herself aggrieved by the action of said board, may appeal to the city council, who shall review such action, and dispose of it as in the judgment of council may be deemed just and proper.

"Section 3. The several amounts assessed and apportioned by the board of assessment and apportionment on each property-holder, as herein provided, shall be collected and paid as taxes and other dues to the city council, and defaulters shall be subject to the same penalties as defaulting tax-payers."

The ordinance has no date; and whether it was passed subsequent to these acts or before, is left altogether uncertain, the one party affirming that it was passed before

and the other denying it; it does not appear from the record when it was passed. Nor, if it had a date, is it apparent to us that the legislature ever intended by any of its general enactments to revolutionize the whole former system of taxation of the city of Augusta by the questiona- ble adoption of this ordinance.

It has been frequently decided that there is a difference between assessments for benefit done to localities by public improvements made thereon, and ordinary taxation. It was so held in *Hayden et al. vs. The City of Atlanta*, 70 *Ga*. 817, and in *Jones et al. vs. Sligh et al., commissioners, et al.*, decided at the October term, 1885, of this court. 75 *Ga*. 7. In the latter case, it was distinctly laid down, "that art. 7, sec. 6, par. 2, of the constitution provides the objects for which the General Assembly may delegate power to a county to levy a tax; and power to levy and collect a tax cannot be granted for any other purpose than those specified. Therefore, the authority granted in code, §1455(b), to the ordinary, or such tribunal as may have jurisdiction over county matters, to levy and collect a tax upon the property in a district, sufficient to defray the expenses of erecting and maintaining fences around the lines thereof, where the provisions of the stock law have been adopted, is unconstitutional and invalid. Code, §5190."

These were local assessments rather than taxes; and we think the judge was right in granting the injunction.

Judgment affirmed.