### Gross *et al. vs.* Taylor.

All property must pay taxes, and parties interested must see that they are paid, in order to protect such reversionary or other interest as they may have therein. But where there is a general assessment of taxes against all the property of a person, and execution therefor is levied on a particular lot of land which was included in the general return of his property, the purchaser at the tax sale got no better title than the defendant in execution himself had. Had the taxes been assessed against the particular lot of land and execution issued therefor, the purchaser at a sale thereunder would have gotten a good title as against the world.

April 27, 1888.

Tax. Title. Before Judge Hines. Scriven superior court. November term, 1887.

Alexander Kemp died testate, leaving eight children. He bequeathed to his son, R. W. Kemp, the use and control of the land in dispute during his life, and provided that after his death it should go to his children and to the issue of such of his children as might then be dead. On arriving at majority, fifteen years after his father's death, R. W. Kemp took possession of the land. There was no executor at the time, but there was a temporary administrator, who made no objection. After this taking of possession, said Kemp gave in the land for taxa-

tion, along with other land, as all his land, being 1,000 acres. While he was in possession, the land in dispute was levied on for his taxes, was pointed out by him and was regularly sold for its full value to defendant in error, the tax *fi. fa.* satisfied, and the balance of the proceeds paid to Kemp. He died without having married. The children of one of his sisters (who died before him and before the commencement of this suit) brought complaint for the land against the defendant. At the time of the trial, there was no executor of the estate of Alexander Kemp, but the temporary administrator consented in writing, after suit brought, that the plaintiffs might sue. He never gave in the land for taxation, and he knew of the sale at the time it was made and never redeemed the property. Said tax execution was for $16.00 and costs, and the land was sold for $400.00.

The defendant pleaded not guilty, and there was a verdict in his favor. Plaintiffs moved for a new trial on the following grounds :

(1)–(3) The verdict was contrary to law, evidence and the charge of the court.

(4) Because the court erred in the following charge : If the jury find from the evidence that R. W. Kemp was in possession of the land sued for, and it was assessed for taxes in the year for which the tax execution against R. W. Kemp was issued for said taxes, and the execution was levied on said land and it was sold for said taxes, and that defendant was the purchaser at said sale, and the land was not redeemed within twelve months from date of sale,—then the defendant got a good title to the land, and said sale divested the title of plaintiffs and every one else, and the verdict should be for the defendant.

The motion was overruled, and the plaintiffs excepted.

HOBBY & MATHEWS, by HARRISON & PEEPLES, for plaintiffs.

DELL & WADE, by brief, for defendant.

BLANDFORD, Justice.

Under the facts of this case, we think the court erred in holding that the purchaser at the tax sale acquired a good title as against everybody. We do not think the purchaser got anything more than the interest of R. W. Kemp. Had the taxes been assessed against this particular land, instead of against all the property of Kemp, and execution issued therefor and the same been levied upon and sold thereunder, the purchaser would have gotten a good title as against the whole world. All property must pay taxes, and parties interested must see that they are paid, in order to protect such reversionary or other interest as they may have therein. But where there was a general assessment of taxes against all the property of Kemp, and execution therefor was levied upon this particular lot of land, which was included in the general return of his property, we do not think the purchaser at the tax sale got any better title than Kemp himself had. It was not a proceeding by the tax-collector *in rem* to collect taxes from this particular land, but a proceeding *in personam* against Kemp. This was a tax execution for $16 only, and Kemp had an abundance of property outside of this land from which to pay it. The land was sold at the tax sale for $400, and the remainder of the $400, after paying this execution for $16, was paid over to Kemp; and this in itself suggests some collusion between Kemp and the purchaser at the sale.

We are aware of no decision of this court which contravenes the law as we have stated it; and what has

been stated to be the law is amply sustained by Black-well on Tax Titles, Cooley on Taxation and Desty on Taxation, and the authorities referred to by these text writers.

Judgment reversed.