Stone, next friend, *v.* Franklin, sheriff, *et al.*

A testator who made his will in 1850 and died in 1865, directed that
certain of his lands be and continue in possession of his wife for
and during her life, and at her death be equally divided between
his two daughters, to be conveyed to them by his executors "for
and during their natural lives each, and if they or either of them
should die leaving no lawful issue, then the said lands are to go to
the rest of my children or their legal representatives" ·

1. *Held*, first, that the testator having died after the passage of the act of February 17th, 1854, his language in the limitation over is to be construed as that act prescribes. *Worrill* v. *Wright*, 25 *Ga.* 657. Thus construed, the words import a definite failure of issue, that is, a failure of issue at the time of the death of the daughters respectively; consequently, no estate-tail or intention to create such estate can be implied from the use of these words, and there is nothing on which to base an enlargement of the express life-estate into a fee simple.
2. *Held*, secondly, that under this clause of the will, whether construed by itself or in the light of the testamentary scheme disclosed by the whole will, the testator most probably intended the surviving children (if any) of a daughter to take the fee at her death. If this was not his intention, the fee would either fall into the residuum and pass under the residuary clause of the will, or descend to the testator's heirs general as in case of intestacy. The estate in each daughter being expressly limited to the duration of her life, she took no fee of any kind, qualified or unqualified; and in this respect the case differs from *Black* v. *Burton*, 30 *Ga.* 638, *Tennell* v. *Ford*, *Id.* 707, *Matthews* v. *Hudson*, 81 *Ga.* 120, and other like cases.
3. *Held*, thirdly, that the judge committed no error in denying an injunction applied for by a son of one of the daughters (her only child) in her lifetime to restrain a sale of her part of the land as her property by virtue of an execution against her under a levy embracing the fee and not restricted to an estate for her life only, the sheriff's advertisement of the intended sale being as comprehensive as the levy. Inasmuch as a sale by the sheriff and a conveyance thereunder would pass only such an estate as the defendant in execution has, the son's interest in the fee (if he has an interest) would not be affected thereby. A direct sale by the tenant for life would work no forfeiture, and the purchaser would acquire the life estate only. Code, §2260. It has never been the practice in Georgia to restrain sheriffs or others by injunction from making harmless sales or executing harmless conveyances.

*Judgment affirmed.*

April 27, 1892. By two Justices. Argued at the last term.

Wills. Estates. Levy and sale. Injunction. Before Judge MILNER. Bartow county. At chambers, December 21, 1891.

An execution against J. C. Branson and his wife, E. M. Branson, was levied on certain land as the property of Mrs. Branson (now Mrs. Stone), and the same was advertised by the sheriff for sale; whereupon a

petition on behalf of B. B. Branson, the minor son and only child of the defendants in execution, was presented, praying for injunction against the sale of any greater interest in the land than an estate for the life of Mrs. Stone, it being claimed that such was her real interest in the land, and that the ownership of the remainder in fee was in the minor, under the will of Benjamin Reynolds, the father of Mrs. Stone. On the denial of the injunction error is assigned. In the demurrer and answer of the defendants it is contended that the will does not create a life-estate in Mrs. Stone with remainder in fee to her son, but creates a fee simple title in her which may be divested upon her dying without leaving any lawful living issue, and that the minor has no vested or contingent interest in the estate, and therefore no sufficient title on which he may ask the protection of the court in this proceeding, but that Mrs. Stone has at least a base fee only determinable upon her death without leaving lawful living issue. It appears that Benjamin Reynolds died on February 6, 1855; that Mrs. Stone married her first husband, J. C. Branson, on April 27, 1862; that she went into possession of the land in question as a legatee under the will and has continued in possession until now; and that the execution in question is founded on a judgment of March 13, 1888. In the will of Benjamin Reynolds he directed that the land in question "shall be and continue in possession of my wife . . for and during her natural life, and at her death to be equally divided between my two daughters [Mrs. Stone and another], to be conveyed to them by my executors hereinafter mentioned, for and during their natural lives each, and if they or either of them should die leaving no lawful living issue, then the said lands are to go to the rest of my children or their legal representatives." He devised certain slaves to his wife "for and during her natural life, . . and at her death

to be equally divided among all my children or their legal representatives." He directed that the rest of his slaves be divided equally between all his children born or to be born, share and share alike, to be given off to them as they became of age or married, "for and during the natural life of each of them respectively, and if any of my said children should die leaving no lawful living issue, then such share or shares to be equally divided among the survivor or survivors of them and their legal representatives, and when any of my said children shall die leaving issue, then each one's share to go to such issue." He gave to two sons certain land "to be had and held by them for and during their natural lives, . . and if any of my said sons shall die without leaving lawful issue living, his or their share or shares to go to and be equally divided among all my children and the survivor of them or their legal representatives." He provided that all the rest of his estate, both real and personal, "be sold and divided among my children equally, as hereinbefore provided for, and at times herein stated."—Mrs. Stone made an affidavit in which she stated that her former husband did not exercise any acts of ownership over the land in question during his life, but always recognized it as her separate property held by her under the will of her father.

JAMES B. CONYERS and BEN. J. CONYERS, for plaintiff.
FOUTE & MILNER and J. M. NEEL, by brief, *contra.*