*Reversed. All the Justices concur.*

---

### JUSTICE *v.* PARNIN.

Where the owner of land located within the limits of a municipal corporation is known to the officers having in charge the matter of levying and collecting municipal taxes, and the ownership of the land is not doubtful, there is no power in such officials, in the absence of legislative authority, to issue an execution in rem against the land.

(*a*) There is no authority in the charter of the City of Fitzgerald, nor in the general law, which authorizes the officials of that municipality, under facts such as are enumerated in the preceding division of this headnote, to issue a tax fi. fa. in rem.

(*b*) A fi. fa. so issued is void, and a sale thereunder will not divest the title of the owner.

Argued February 13,— Decided July 17, 1908.

Ejectment. Before Judge Whipple. Ben Hill superior court. April 2, 1907.

*Haygood & Cutts,* for plaintiff. *E. W. Ryman,* for defendant.

ATKINSON, J. This was a suit in ejectment. The parties claimed under a common grantor, each having a complete chain of record title from the common grantor. The defendant claimed under a tax deed executed by the marshal of the City of Fitzgerald, in pursuance of a sale made on account of a failure of one of the grantors in the plaintiff's chain of title to pay municipal taxes to the City of Fitzgerald for the year 1899. The validity of that sale is the controlling question. If the sale was authorized by law and regular, and the purchaser received a lawful tax deed in pursuance thereof, and the property was not afterwards redeemed by the owner, or some one else authorized by law to redeem, the purchaser acquired lawful title, and his grantee, the defendant, should

prevail. If there was no authority to sell, or the sale for any other reason was invalid, the owner's title was not divested, and his successor in title, the plaintiff, should prevail. The validity of the sale was attacked, and in support of his attack the plaintiff, under the pleadings and evidence, insisted, that, inasmuch as the owner of the property was known to the municipal authorities, the execution should have been issued against the owner, and not against the specific property, and that, under the conditions just stated, the municipality did not have authority to issue a tax execution in rem. If this contention is well-founded, it will dispose of all other questions made in the case, because no valid sale could be made under a void execution. We will proceed, therefore, to a consideration of the question presented by the attack upon the execution. The execution was in the following language: "To the Chief of Police, Fitzgerald, Ga.: You are hereby commanded to levy on and sell, according to law, lot number 13, square number 9 of block number 7 of city of Fitzgerald, Georgia, to satisfy the 1899 city taxes against said real estate and the costs of levy and sale, said taxes amounting to........dollars and 76 cents. And you are further commanded that of the goods, chattels, and tenements of J. Y. Niles you cause to be made by levy and sale the sum of ........dollars and........cents (and costs of levy and sale), same being the amount of personal property tax due to the City of Fitzgerald, Georgia, for the year 1899, from said J. Y. Niles; and make return thereof to me according to the law. Witness the Honorable Thomas Wilson, mayor of Fitzgerald, Georgia, and the seal of said city, this December 12, 1899." Section 21 of the charter of Fitzgerald (Acts 1896, p. 157) enacts, among other things, "that the city council shall have power to levy and collect taxes for general and special purposes on real and personal property." Section 62 provides "that the city council at its first regular meeting in February, within ten days thereafter, levy a tax for general purposes sufficient to meet the expenses of the year, based upon estimates furnished by the city clerk or a committee of the city council, and in addition thereto a levy for the interest and sinking fund as required by this act. This levy shall be made in the form of a certain number of mills on the dollar of valuation. The city council shall provide by ordinance for collection of taxes twice a year, one half each six months." These two sections of the act are

sufficiently broad to confer upon the municipality a power to levy and collect taxes, and in doing so to issue execution, or, more strictly speaking, process in the nature of execution.    The record before us does not contain any ordinances passed by the municipal council in reference to the collection of taxes as referred to in the 62nd section of that charter, except one which will be presently referred to.    We do not know what they are, if any exist, and are not called on either to construe them or pass upon their validity.    The only ordinance introduced was one adopted by the city council of 1899, directing that the sale of property for delinquent taxes for the year 1899 should be advertised in the month of January, 1900, by the chief of police.    This has no reference to the method of issuing executions, but is merely a direction to the chief of police to advertise for the sale at a certain time.    Taking the record as it is before us and construing the charter of Fitzgerald in harmony with and in the light of the general methods of taxation, and not in view of any question of ordinances or their validity, was the execution which was issued in this case valid?    The Political Code, § 778, declares that taxes are to be charged against the owner of the property, if known, and against the specific property itself if the owner is not known.    The section in full is as follows:  "Taxes are to be charged against the owner of property if known, and against the specific property itself if the owner is not known.    Life-tenants, and those who own and enjoy the property, are chargeable with the tax thereon.    Hence, while the public may treat property as belonging either to the maker or the holder of a bond for titles, when the latter is in possession, yet as between the parties the one receiving the rents or enjoying the use is liable for the tax."    It is true that this law occurs in the Political Code touching the general tax laws, and by its terms does not specifically refer to municipalities; but it found its way into the code by codification, not by legislative enactment, except by the adoption of the code, and it was codified from the cases of *Burns* v. *Lewis,* 86 *Ga.* 602 (13 S. E. 123), *Wells* v. *Savannah,* 87 *Ga.* 397 (13 S. E. 442), and *National Bank* v. *Danforth,* 80 *Ga.* 55 (7 S. E. 546), all three of which were cases of municipal taxes.    If the provisions of the first part of that section have no application to municipalities, neither have those of the latter part of it; and yet municipal corporations would certainly claim that the declaration that life-tenants and those who

own and enjoy the property are chargeable with the tax thereon .
applied to them as well as to the State or county, and also that the
public may treat property as belonging either to the maker or the
holder of a bond for titles, when the latter is in possession.   If
this section is not directly controlling on municipal corporations,
certainly their procedure and rights, in the absence of anything
to the contrary, should be viewed in harmony with such law.   If
so, then the execution here involved was void.   There is no other
provision of the charter of Fitzgerald, or of the general law, which
tends to confer power upon the municipality to issue a tax fi. fa.
in rem.   There is no ·controversy over the fact that the owner of
the property was known.   Indeed the levy declared the property to
be his, and the deed executed in pursuance of the sale also declared
the name of the owner of the property, and conveyed it as being
his property.   There is no question, therefore, of unknown or even
doubtful ownership, but it is a clear-cut case where the municipal
authorities, with full knowledge of the actual owner, did not issue
execution against him, but issued an execution solely against the
lot as a process in rem.   While there is something said in the
fi. fa. about a personal tax on other property, the amount of tax
thereon is not stated, and the only tax actually directed to be col-
lected was the tax on the land in dispute, and the execution was
against that particular property.   Where the owner is known, the
execution should be issued against him.   Where the owner is un-
known, the execution may be against the property.   If the owner-
ship is doubtful, the execution may be so shaped as to declare the
tax to be due upon certain property, and to cause it to be realized
therefrom.   Whether in a case of doubt the supposed owner should
be mentioned or not is not now for consideration, nor are we
called on to decide whether, in an execution against an owner for
taxes solely on one piece of property, or in an execution for taxes
where the owner is doubtful, there might be a direction as to certain
property or so much thereof as was necessary to realize the amount
of the execution.   None of these questions are presented to us;
but what we now hold is, that in a case like the present, where there
is no question of ownership or of doubt or of want of knowledge,
but the municipality knows the owner and deals with the property
as his, it ought not, without legislative authority, to issue an execu-
tion against the property as a whole in rem.   For the reasons in-

dicated, we are of the opinion that there was no authority shown in the municipal officers to issue the execution specifically against the land in dispute, where the owner was known, and the question of ownership was not in doubt. The execution issued without authority was void, and the title of the owner was not divested by the sale. See, in this connection, *Miller* v. *Brooks,* 120 *Ga.* 233 et seq. (47 S. E. 646).

*Judgment reversed. All the Justices concur, except Fish, C. J., disqualified.*