KIRK *v.* BRAY, tax-collector, *et al.*

No. 10922.   December 16, 1935.
Rehearing denied February 21, March 14, 1936.

*Green & Michael* and *Wolver M. Smith,* for plaintiff.
*W. W. Armistead, Hamilton McWhorter, Erwin, Erwin & Nix, M. J. Yeomans, attorney-general,* and *B. D. Murphy,* for defendants.
*H. L. Rogers, M. C. Barwick, J. C. Savage, C. S. Winn,* and *Bond Almand,* for persons at interest, not parties.

GILBERT, Justice. Mrs. Ruby Fleeman Kirk filed a petition against J. L. Bray as tax-collector of Oglethorpe County, T. E. Watkins as sheriff, and others, to enjoin the levy of certain tax executions and to have the same canceled as clouds on her title. The defendants in their answer admitted that the taxes could not be collected at law, and filed a cross-petition asking that the liens be established and foreclosed in equity. The State of Georgia and Oglethorpe County, through their proper officials, intervened to recover their respective portions of the taxes, were made parties defendant, and adopted substantially the answer of the original defendants. The case was submitted to the judge on an agreed statement that the facts were as set out in the pleadings. They were substantially as follows: J. C. Fleeman, father of Mrs. Ruby Fleeman Kirk, had for more than twenty-five years a life-estate in 282.92 acres of certain described realty in Oglethorpe County, and collected the rents and profits therefrom. Mrs. Kirk owned the remainder in fee, and upon the death of her father on July 19, 1930, she took possession of the said land and has been in possession since that time. For several years, including the years 1926 through 1930, J. C. Fleeman returned for taxes the land above mentioned, together with other land, making a total of 452 acres valued at $5424. The tax-receiver accepted the returns each year, and each year after the taxes became due and were not paid the tax-collector issued executions against J. C. Fleeman, in personam only, for the sum of $119.33 on the total return. No effort was made to levy any of these fi. fas. during the lifetime of J. C. Fleeman, but, after his death in 1930, the authorities of Oglethorpe County threatened to levy them on the land then belonging to Mrs. Kirk. On March 3, 1923, the life interest of J. C. Fleeman was sold after being levied on for taxes due for the year 1921, and Mrs. Kirk bought in the life-estate at such sale. Subsequently Fleeman redeemed his interest in the land. The defendants in their answer admitted that they were not entitled to collect more than the pro rata amount of taxes actually due on the 282.92 acres in controversy, which they set for $74.67 for each of the five years. They alleged that no property of the estate of Fleeman could be found on which to levy the fi. fas., except about ten acres which were not of sufficient value to pay all of the taxes due. They admitted that there was no method of collecting the taxes at law, and asked that

their alleged lien for taxes be established and foreclosed in the equitable proceeding. The court refused an injunction, but granted the equitable relief sought by the defendants by decreeing "That the State of Georgia and Oglethorpe County have a lien on the land aggregating 282.92 acres, . . for the unpaid State and county taxes, including the county-wide school tax for the years 1926 to 1930, inclusive, that accrued on the said 282.92 acres," and that "The State of Georgia and Oglethorpe County are entitled to have their said tax lien against said land . . enforced against said land," etc. It was further "ordered that the sheriff of Oglethorpe County lay out of said 282.92 acres of land a parcel that, in the opinion of said sheriff, is of sufficient value for a sale thereof to satisfy said tax lien, . . advertise for sale and sell said parcel of land." The decree also contained provisions against excessive sale, notice to the petitioner, redemption by her within twelve months, division of costs, and retained jurisdiction for further orders to carry out the purposes of the decree. The petitioner excepted, and assigned error on the court's refusal to grant the injunction and the decree that the defendants were entitled, to have their alleged lien established in equity and have the property sold to satisfy said alleged lien.

■ The present case does not make necessary any opinion as to whether the action brought by Mrs. Kirk against the tax-collector and others in their official capacity is in effect a suit against the State, and whether it can be maintained. The State and the County of Oglethorpe, through their proper officers, intervened in the suit, accepted it, and filed a cross-petition asking for certain affirmative relief. The record shows that they entered into a stipulation that the case be tried by the court without a jury and only on the pleadings. Mrs. Kirk sought to enjoin the tax-collector and others from levying on her property the fi. fas. which have been described, and to have them canceled as clouds on her title. The State and the County of Oglethorpe allege that they are without adequate remedy at law, and admit that they are now powerless to collect the back taxes on the property in pursuance of any statutory authority. This is the sole ground upon which they seek the jurisdiction of a court of equity and upon which they pray that the court will frame a remedy. It is not alleged by Mrs. Kirk that the fi. fas. had actually been levied on her property, though she

does allege that the county commissioners were threatening to cause a levy to be made unless she paid the back taxes. It will first be considered whether or not a court of equity will lend its aid in the collection of back taxes. It may be stated that the defendants in error insist that the assessments on the property were properly made in personam against the life-tenant, and could not have been assessed against the remainderman. It is further insisted that no execution in rem could now be issued against the property. Mrs. Kirk holds the fee simple since the death of the life-tenant. It would avail the State and Oglethorpe County nothing if the executions against J. C. Fleeman, the life-tenant, were levied upon the property, as it is well established that under the facts of this case a sale under the original fi. fa. in personam would pass only the life-estate. *Clower* v. *Fleming,* 81 *Ga.* 247 (2) (7 S. E. 278); *Gross* v. *Taylor,* 81 *Ga.* 86 (6 S. E. 179); *Stone* v. *Franklin,* 89 *Ga.* 195 (3) (15 S. E. 47); *Roddenberry* v. *Simpson,* 171 *Ga.* 715 (156 S. E. 583, 75 A. L. R. 414). The life-estate having ended, a purchaser would get nothing substantial if it were sold. Taxes are burdens which the State imposes upon property owners in the exercise of its sovereign power. They are not debts as such. Not being debts, they can not be collected by a suit at law. *Stale* v. *W. & A. R. Co.,* 136 *Ga.* 619 (2) (71 S. E. 1055); *Citizens & Southern Bank* v. *State,* 151 *Ga.* 696, 700 (108 S. E. 161); Cooley on Taxation (ed. 1924), § 1330.

In *State* v. *W. & A. R. Co.,* supra, it was said: "It was a rule at common-law that where a statute creates a right and provides a particular remedy for its enforcement, the remedy is generally conclusive of all common-law remedies. When this rule is considered in connection with the genius and spirit of our American institutions, its application to the collection of taxes, where adequate statutory remedy is provided, can not be doubted. A most distinctive feature of the constitution of the United States and of this State is the division of the powers of government into three separate departments, executive, legislative, and judicial. It was designed and intended that one department should not usurp the ordinary functions of the others, but that all three should act in harmonious relation. So when the legislature authorizes a tax for governmental purposes and provides an adequate remedy for its collection by administrative officers, the necessary intendment is

that the collection of the tax is exclusively confided to that administrative department of the government. And it has been held by this court that when the statute undertakes to provide remedies for the collection of taxes, and those given do not embrace an action at law, a common-law action for the recovery of taxes as a debt will not lie. *DuBignon* v. *Brunswick,* 106 *Ga.* 317 (32 S. E. 102); *State* v. *S. W. R.,* 76 *Ga.* 33. However, it is contended that the petition presents equitable features, and that in equity an action may be maintained by the State to collect its revenue. It would be idle to enter into a discussion of possible differentiation between an action in which the equitable powers of the court are invoked and one only seeking purely legal relief. Whatever equitable relief is asked in the petition is predicated upon the erroneous construction of the lease act [lease of W. & A. Railroad] that the provision for the payment of taxes upon the income of the leased property is a debt arising from the contract executed pursuant to the act, and not a tax. The General Assembly has enacted an elaborate scheme for the assessment of the property of railroad companies and the collection of any tax lawfully levied. Provision is also made for the collection of back taxes from delinquent or defaulting railroad companies; and whatever infirmity may have been in the original statute with reference to assessment without opportunity of the delinquent taxpayer to be heard, as pointed out by the Supreme Court of the United States in Central of Georgia Railway *v.* Wright, 207 U. S. 127 (28 Sup. Ct. 47, 52 L. ed. 134), has been relieved and cured by the amendment of 1908 (Acts 1908, p. 25). The amendment relates to the remedy and does not impair any right of the taxpayer."

It is conceded by the defendants in error that no action can be maintained at law for the collection of the back taxes; but it is urged that the State has a general lien on the property, and that a court of equity should provide a remedy for the enforcement of the lien. In support of their contentions they cite the Code of 1933, §§ 3-105; 37-105; 37-1203, as to the office or function of a court of equity. It is, however, a prerequisite to the aid of a court of equity that some right must already exist in favor of the petitioner, as to which no provision has been made for its enforcement. Furthermore, "Equity is ancillary, not antagonistic, to the law; hence equity follows the law where the rule of law is appli-

cable, and the analogy of the law where no rule is directly applicable." Code of 1933, § 37-103. As was said in *McPhee* v. *Guthrie*, 51 *Ga.* 83, 89: "It is true, as a general rule, that equity follows the law; that is to say, a court of equity would be as much bound by a positive statute of the State as a court of law would be." How should equity follow the law in this case? As shown above, no right now exists under the statutes for the collection of these back taxes by a summary action on the part of the tax officials or by an action at law. We think the statutes provided full and complete methods for the collection of the taxes, and they might, by diligence, have been collected. "It might have been provided by statute that tax delinquents should be sued as debtors upon accounts, but the genius of our law has devised a more speedy, efficient proceeding. How efficient the proceeding is we need not recite further than to say that it is adequate under all conditions, and to all situations, reaching back after the past as well as laying hold on the present. 'There is ample provision in the laws of this State for proceeding against one who was a tax defaulter in the years that are past. As we have interpreted our laws, they afford ample machinery, consistent with constitutional provisions, for reaching every species of property that is subject to taxation at any time in the past that the taxing power is authorized to proceed for the collection of back taxes. There is no fault in the law.' *Ga. R. &c. Co.* v. *Wright*, 125 *Ga.* 589, 601 (54 S. E. 52)." *Coca-Cola Co.* v. *Atlanta*, 152 *Ga.* 558, 565 (110 S. E. 730). We are aware that the quoted language from *Ga. R. &c. Co.* v. *Wright* in the *Coca-Cola* case was from a decision which was overruled by the United States Supreme Court (207 U. S. 127, 28 Sup. Ct. 47, 52 L. ed. 134), but the reversal was on another basis, viz., that the statute under consideration did not at that time provide an opportunity for the delinquent taxpayer to be heard; and the quoted statement that our laws afford ample machinery, consistent with constitutional provisions, for reaching every species of property for taxation states a truth which still obtains. Incidentally, as pointed out in *State* v. *W. & A. R. Co.*, supra, that defect has been remedied by statute.

The difficulty of the State and Oglethorpe County as respects the collection of the back taxes in the present case is, not that there was not ample machinery under the statutes, but that the

fi. fas., though properly issued in personam, were never levied upon the property during the lifetime of J. C. Fleeman. There was "no fault in the law." Now when a court of equity is petitioned to afford relief to the State and Oglethorpe County, it must recognize, first, that in a court of law an action can not be maintained to collect the taxes. Equity being only ancillary to the law, and the statutory provisions for the collection of taxes being full and complete, and no action at law being maintainable, a court of equity will not create what did not previously exist—a right to enforce the collection of taxes by an action in equity. As was said in *Cason* v. *United Realty & Auction Co.*, 158 *Ga.* 584, 586 (123 S. E. 894) : "The power to sell property for unpaid taxes is derived from the statutes. If there is failure in respect to any of the requirements, it is fatal and the sale is invalid. 'It is therefore accepted as an axiom, when tax sales are under consideration, that a fundamental condition of their validity is that there should have been a substantial compliance with the law in all proceedings of which the sale was the culmination. This would be the general rule in all cases in which a man is to be divested of his freehold by adversary proceedings; but special reasons make it peculiarly applicable to the case of tax sales'" (citing). In *Norris* v. *Coley*, 100 *Ga.* 547, 554 (28 S. E. 222), it was said: "This court has decided, however, that since the adoption of the Code executions issued for State and county taxes stand on the same footing, as to the levy and sale of the property, as executions issued upon judgments at law. *Byars* v. *Curry*, 75 *Ga.* 515. So that now when property is sold for State and county taxes, the rule as to the levy and the sale is no more strict than the one applied in cases of sales under judgment and execution. The modification, by our Code, of the general rule, does not render such a tax sale as the one now under consideration a valid one. For in this case the tax officer had no jurisdiction to issue an execution against the land, and the execution issued by him against it was a nullity, and consequently the sale thereunder was absolutely void." It was ruled: "A tax-collector has no authority of law to issue a tax execution against land in rem, if its owner is in possession thereof at the time when it becomes the officer's duty, because of the owner's having made default in returning the land, to make a return for him." In the present case there was no

default in returning the land, and no objection was taken, as might have been done, as to the valuation of the land. It is not contended that any execution in rem could now be issued against the land. Any sale thereunder would be void. But it is argued in the brief of counsel for the defendants in error that they are. not seeking to collect a debt, and they say that Mrs. Kirk "is not personally liable," but that their cross-action is a "proceeding in rem." In what respect? To foreclose a lien by subjecting the property of Mrs. Kirk to which she has succeeded in fee? As we have shown, taxes are not debts. This is essentially a proceeding to collect back taxes through equitable aid. How could an equitable proceeding in rem be justified when there exists no execution in rem? *"An assessment made in the manner prescribed by the statute* is indispensable in proceedings to enforce the collection of taxes."* (Italics ours.) *Hawkins* v. *Intendant,* 63 *Ga.* 527; *State* v. *W. & A. R. Co.,* supra. When the returns of J. C. Flee- man were accepted, and no other assessments were made within thirty days, no court could thereafter confer upon the tax officer the power to make another. *Bohler* v. *Verdery,* 92 *Ga.* 715 (19 S. E. 36); *Douglas* v. *Forrester,* 150 *Ga.* 57 (2) (102 S. E. 347).

Thus it is shown that under the legislative provisions the fee of Mrs. Kirk could not, in the absence of an assessment and execution sufficient to reach the remainder interest, be divested by a sale of the property. It is apparent that the State of Georgia and Oglethorpe County are, in effect, asking a court of equity to indirectly convert an in personam execution into an in rem execution and let the property be sold under the improvised or reconstructed character of the execution, in complete disregard of the absence of an actual supporting execution in rem. Stated. otherwise, if the sheriff could, under the authority of the statute, sell only the life-estate which existed in the property, how could a court of equity enlarge the interest to be conveyed? A court of equity can not thus run counter to the law. The matter of collecting taxes, in the absence of statutory provision therefor, is beyond the jurisdiction of the judicial department of the government. It is solely the prerogative of the legislative department. "The power of taxation is legislative, and can not be exercised otherwise than under the authority of the legislature." Meriwether *v.* Garrett, 102 U. S. 472, 501 (26 L. ed. 197). The

legislature has prescribed adequate methods which we hold to be exclusive. In Preston *v.* Chicago &c. R. Co., 175 Fed. 487, the first headnote is: "In the absence of statutory authority therefor, a suit in equity can not be maintained for the collection of taxes assessed upon property." In the opinion it was stated: "It is not contended that any express statutory authority exists for the institution of an action like this. The contention which has been strongly and ably presented is that the right to come into equity arises out of the justice and necessity of the case, since otherwise the complainant is without adequate remedy, and that equity will never permit a wrong to exist without providing a remedy for its correction. The court dealt with this very question in the cases of Rees *v.* Watertown, 19 Wall. at pages 121 and 122, 22 L. ed. 72, Heine *v.* Levee Commissioners, 19 Wall. at page 658, 22 L. ed. 223, and in Grand Rapids Furniture Co. *v.* Trustees, etc., 102 Ky. 558, 44 S. W. 98. In each of those cases the contention was overruled. In each of them it was held that equity can not supply a remedy which the legislature has not given for the collection of taxes assessed upon property, and that the legislature alone can do so." In Rees *v.* Watertown, 19 Wall. 107, 121, referred to in the Preston case, it was said: "The plaintiff invokes the aid of the principle that, all legal remedies having failed, the court of chancery must give him a remedy; that there is a wrong which can not be righted elsewhere, and hence the right must be sustained in chancery. The difficulty arises from too broad an application of a general principle. The great advantage possessed by a court of chancery is not so much in its enlarged jurisdiction as in the extent and adaptability of its remedial powers. Generally its jurisdiction is as well defined and limited as that of a court of law. It can not exercise jurisdiction when there is an adequate and complete remedy at law. It can not assume control over that large class of obligations called imperfect obligations, resting upon conscience and moral duty only, unconnected with legal obligations. Judge Story says, 'There are cases of fraud, of accident, and of trust which neither courts of law nor of equity presume to relieve or mitigate,' of which he cites many instances. Lord Talbot says, 'There are cases, indeed, in which a court of equity gives remedies where the law gives none, but where a particular remedy is given by law, and that remedy

bounded and circumscribed by particular rules, it would be very improper for this court to take it up where' the law leaves it, and extend it further than the law allows.' Generally its jurisdiction depends upon legal obligations, and its decrees can only enforce remedies to the extent and in the mode by law established. With the subjects of fraud, trust, or accident, when properly before it, it can deal more completely than can a court of law. These subjects, however, may arise in courts of law, and there be well disposed of."

In Heine *v.* Levee Commissioners, 19 Wall. 655, 659 referred to in the Preston case, supra, it was said that the case of Rees *v.* Watertown "was much stronger than the one before us, and is unquestionably decisive of this. It is very clearly shown that the total failure of ordinary remedies does not confer upon the court of chancery an unlimited power to give relief. Such relief as is consistent with the general law of the land, and authorized by the principles and practices of courts of equity, will, under such circumstances, be administered. But the hardship of the case, and the failure of the mode of procedure established by law, is not sufficient to justify a court of equity to depart from all precedent and assume an unregulated power of administering abstract justice at the expense of well-settled principles." It was further said: "The power we are here asked to exercise is the very delicate one of taxation. This power belongs in this country to the legislative sovereignty, State or National. In the case before us the National sovereignty has nothing to do with it. The power must be derived from the legislature of the State. So far as the present case is concerned, the State has delegated the power to the levee commissioners. If that body has ceased to exist, the remedy is in the legislature either to assess the tax by special statute or to vest the power in some other tribunal. It certainly is not vested, as in the exercise of an original jurisdiction, in any Federal court. It is unreasonable to suppose that the legislature would ever select a Federal court for that purpose. It is not only not one of the inherent powers of the court to levy and collect taxes, but it is an invasion by the judiciary of the Federal government of the legislative functions of the State government. It is a most extraordinary request, and a compliance with it would involve consequences no less out of the way of judicial procedure,

the end of which no wisdom can foresee." See also Thompson *v.* Allen County, 115 U. S. 550 (6 Sup. Ct. 140, 29 L. ed. 472). Those decisions, of course, dealt with the question of whether a Federal court would, as a court of equity, invade the province of the taxing or legislative department of a State government, but the reasoning also supports our conviction that a State court of equity has no right to encroach upon or usurp the legislative function of providing for the collection of taxes. The legislature undoubtedly has the power to provide that a court of equity might do what it is asked to do in the present case, but it has not as yet surrendered any of its prerogative in tax matters. Counsel for the defendants in error have cited certain cases as authority for the equitable aid here sought, but they are obviously not in point. In *Citizens & Southern Bank* v. *State,* supra, the proceeding was said by the court to be as follows: "The petition has not for its purpose the collection of taxes as such, but it seeks to hold the defendants, who have acted, not technically as trustees, but in a trust relation with reference to certain funds, liable for the diversion of such funds, which should have been applied by them in good conscience to the payment of taxes due the State and county on property which had been sold and the funds misapplied by them. . . The present is not a suit at law to collect taxes as such, but is a proceeding alleging that the directors of two corporations and the cashier of one of them agreed to the liquidation of one of the corporations, and the agent of one, under agreement, did bring about the liquidation, received and paid out all of the proceeds from the sale, and failed and refused to pay the taxes upon property which had been returned, which taxes were due by the bank which went into liquidation; and the present proceeding was instituted to recover of these defendants the amount which is due by the selling corporation for taxes on account of the misappropriation of the funds arising from the sale of the assets of the bank which went into liquidation under the agreement as stated in the petition."

In *Coca-Cola Co.* v. *Atlanta,* supra, the petition was brought for the purpose of discovery as to the ownership of certain stocks, preliminary to an effort to collect taxes. It was held that the petition was good against demurrers, and that the court did not err in entering a decree for the discovery prayed. In *Georgia Power Co.*

v. *Decatur,* 179 *Ga.* 471, 489 (176 S. E. 494), which decision was reversed by the Supreme Court of the United States (295 U. S. 165, 55 Sup. Ct. 701, 79 L. ed. 702), it was said: "The city is authorized to sue in its corporate name. It could not levy its execution, and could not sue at law. An appropriate remedy left it was a suit in equity to enforce its lien against the Georgia Power Company, the company that in the merger appropriated the property of the defendant in execution that was subject to the lien. The suit in equity was authorized." Then follows the citation of two Georgia cases, *Citizens & Southern Bank* v. *State,* 151 *Ga.* 696 (supra), and *Smith* v. *Kingsley,* 178 *Ga.* 681 (173 S. E. 702). It is urged by counsel for the defendants in error, that, while the judgment was reversed by the Supreme Court of the United States on grounds other than appear in the above quotation, it left unimpaired "the ruling that equity would have jurisdiction in such a case." The reply is that in the *Georgia Power Company* case the subject-matter was a paving assessment rather than a tax, which two were distinguished in *Hayden* v. *Atlanta,* 70 *Ga.* 817, 822, as follows: "Taxes are different from assessments for local improvements, taxes being burdens upon all persons and property alike, and compensated for by equal protection to all, while assessments are not burdens but equivalents, and are laid for local purposes upon local objects, and are compensated for to some extent in local benefits and improvements, enhancing the value of the property assessed. Taxes are imposed on the person [the owner, if known] ; assessments are imposed on the property. This is the rule as recognized in most of the states of the Union, as will be seen by" numerous authorities cited. In *City Council of Augusta* v. *Murphey,* 79 *Ga.* 101, 105 (3 S. E. 326), it was said: "It has been frequently decided that there is a difference between assessments for benefit done to localities by public improvements made thereon, and ordinary taxation. It was so held" (citing). Another element in the *Georgia Power Company* case was that the defendant had filed in the office of the Secretary of State the consolidated agreement under which it had bound itself to assume and pay all of the obligations of the other two merged corporations. Finally, the statement that "The suit in equity was authorized" can not, as invoked in the present case, be any broader than the cases cited for its authority, and, as we have

already shown, the *Citizens & Southern Bank* case was a proceeding in equity to reach a particular fund, rather than to collect a tax; and it will be found by reference to *Smith* v. *Kingsley* that it did not in any wise involve the collection of a tax. There is nothing in the cases cited by counsel that is contrary to what we hold here, viz., that a court of equity can not lend its aid in the collection of State and county taxes, and therefore that the court erred in decreeing that .the State and Oglethorpe County were entitled in equity to have "their said tax lien . . enforced against" the property of Mrs. Kirk, and in authorizing the sheriff of the county to sell a sufficient portion of her land to realize the amount of taxes alleged to be due, etc.

■ Another assignment of error is that the court erred in not decreeing that the fi. fas. be canceled as clouds on the title of the petitioner. This is without merit. As shown in the foregoing part of the opinion, only a life-estate could be conveyed if the property were sold under the fi. fas., which were issued in personam only, and there does not now exist any life-estate since the death of J. C. Fleeman, and Mrs. Kirk's title would be unaffected. The court did not err in not decreeing that the fi. fas. be canceled.

■ The assignment of error that the court erred in not granting an injunction is also without merit. It is provided in the Code of 1910, § 1159 (Code of 1933, § 92-7801), that "When property is levied on under a tax fi. fa. issued either by the comptroller-general or tax-collector, it may be claimed by a third person and tried in the same manner as other claims are, except that the claimant shall give a bond and security for the eventual condemnation-money; and if found subject, such claimant and his sureties shall be in all respects liable as on an appeal bond." Having an adequate remedy at law by the filing of a claim in the event an attempt be made to sell her property, Mrs. Kirk is not entitled to an injunction. *Campbell* v. *Drainage Commissioners,* 156 *Ga.* 64 (118 S. E. 720); *Harris Orchard Co.* v. *Tharpe,* 177 *Ga.* 547 (170 S. E. 811); *First National Bank* v. *Phœnix Life Ins. Co.,* 179 *Ga.* 74 (3) (175 S. E. 361). The court did not err in refusing the injunction sought in the present case.

Judgment *affirmed* as to the refusal to cancel the fi. fas. as clouds on title, and as to the refusal to grant an injunction, and *reversed* as to the decree that the property in question be sold for the payment of back taxes. *All the Justices concur.*

ON MOTION FOR REHEARING.

GILBERT, Justice. Movants argue (1) that the effect of the present decision is to leave the law in such shape that ad valorem taxes due on property assessed against a life-tenant insolvent except for the life-estate, who dies before the time for the collection of taxes, may not then be collected from any one; and (2) that the provision of the Code, § 92-110, that "Life-tenants, and those who own and enjoy the property, shall be chargeable with the taxes thereon," does not bind the State, but is only binding between the parties, that is, between the life-tenant and the remainderman. Neither inconvenience nor loss of revenue can alter the construction of a law which is clear. In such a case courts can only declare the law as made by the proper co-ordinate branch of the government. It may be added that the ill effects apprehended by movants are not apparent to us. Moreover, the case does not present for decision the question of what is the proper procedure for the collection of taxes in a case like this, where the life-tenant dies leaving the taxes unpaid. To decide that question now would obviously be obiter. If, however, movants are correct in their second contention, as stated above, it must follow that contention (1) can not be sound. This court has not expressly decided whether the provision in the Code, § 92-110, as to life-estates is binding on the State. Code, § 102-109, *Lingo* v. *Harris,* 73 *Ga.* 30, and *Brunswick* v. *King,* 91 *Ga.* 522, 524 (17 S. E. 940), cited by movants, only indirectly bear on the subject. "The State is not bound by the passage of a law, unless named therein, or unless the words of the act should be so plain, clear, and unmistakable as to leave no doubt as to the intention of the legislature." § 102-109, *National Bank* v. *Danforth,* 80 *Ga.* 55 (7 S. E. 546), dealt with the construction of the last sentence in § 92-110, with reference to the taxation of property held under a bond for title. It is stated by movants that the Code section was taken from *National Bank* v. *Danforth,* supra, was placed in the Code of 1895, and appears in subsequent Codes. It would seem (without deciding) that the ruling there made with reference to property held under bond for title would likewise apply to property held by a life-tenant with remainder over. The first headnote in that decision is as follows: "In taxing real property and collecting the taxes thereon, the public authorities may treat it as belonging

indifferently either to the maker or the holder of a bond for titles when the latter is in possession; but as between the parties to the bond, the one taking the rents and profits, or enjoying the use for the time being, is liable for the taxes." In the opinion Mr. Chief Justice Bleckley said: "With reference to the public, we hold that the assessment, in case of an outstanding bond for titles, where the holder of it is in possession of the premises, may be made either against such holder or against the maker of the bond, the person in whom the legal title rests for the time being; and a sale by the public authorities founded on an assessment against either would pass the title no doubt as against the other, if it were made for the taxes on that property alone; because it is no less the duty of the one than the other, relatively to the public, to pay taxes, or to see that they are paid. But as between themselves, it is very clear that the person who is in possession, enjoying the property itself or its rents and issues, ought to be charged, and is chargeable, with the taxes."

If we concede, as argued by movants, that the principles ruled in the case from which we have just quoted apply in the present case, then it must likewise be conceded that by proceeding as required by statute the tax could have been collected either from the life-tenant or the remainderman, or both. It would also follow that the State has its election in every instance whether to collect the taxes from the life-tenant or from the remainderman. However, that would not change the effect of the present decision. The taxing authorities elected to assess and collect the taxes from the life-tenant, and can not again assess the property against the remainderman. The tax fi. fa., being in personam, without specifying any particular property, was ineffective to sell more than the life-estate. Had the tax-receiver at the proper time assessed the property against the remainderman, under the Code section the remainderman in that event could legally proceed against the life-tenant to collect from him whatever amount she paid for taxes. The property having been assessed against the life-tenant, and more than thirty days having elapsed, the tax-receiver could not assess it again, nor could any court for any reason confer that power upon him. *Bohler* v. *Verdery*, 92 *Ga.* 715 (supra.) As stated in the *Bohler* case, "The principles which authorize a court of equity to relieve against mistake have no application to the case. The tax-

receiver is bound to know the law regulating his official duty; and for his error of judgment in reference thereto no responsibility can attach to the taxpayer." On the question of how taxes are to be charged, it was said by Mr. Chief Justice Bleckley in *Burns* v. *Lewis,* 86 *Ga.* 591, 602 (13 S. E. 123) : "In this State the universal rule, unless some statute can be shown to vary it in particular instances, is that taxes are to be charged upon the owners of property. Owners, therefore, have an interest in being properly designated in executions which issue for the collection of taxes upon their property, or, if they can not be designated with reasonable certainty, that the property shall be pointed out in the execution as authority for seizing it irrespective of ownership, or as the property of some particular person. In all cases of doubt, the execution should specify the particular realty on which the tax accrued, and direct the officer to seize it or so much of it as is necessary to pay its own taxes," See also *Justice* v. *Parnin,* 130 *Ga.* 869 (61 S. E. 1044). It might be here suggested that if the tax official is in doubt as to how to assess the property and to issue the execution to collect the tax on the full taxable value, the method suggested in *Burns* v. *Lewis,* supra, would seem to point the way. The execution in the present case was strictly in personam, without reference to any particular property, reading: "You are commanded, that of the goods and chattels, if any be found, otherwise of the lands and tenements of J. C. Fleeman, you make," etc.; but if it had designated specifically the property in question, it may be, though we do not now decide, that a sale after levy would pass the fee.

Movants mention several cases which they state were overlooked by this court. They were not overlooked, but were carefully considered before the opinion was rendered, and in them nothing is found decisive of the question presented in the instant case. *State* v. *Hancock,* 79 *Ga.* 799, 801 (5 S. E. 248), was a claim case. The wife and daughters of the defendant in fi. fa., living with him, had stood by for years and allowed him to return the property as his own. Under such circumstances the tax-collector was right in issuing an execution in personam against him. The court said that if it should be held that the executions were invalid and that no return had been made, the tax-collector was in a position to assess it and place a double tax upon the property, and that the claimants would have to pay it or suffer the property to be sold.

Personal property was also included in the returns, and the claimants made no effort to have it separated, and had not paid the taxes properly due on the personal property. In this case there was no contention that the return was invalid; nor was the execution invalid. Both were according to law. There is no provision for retaxing except after a new assessment provided for in certain cases by the Legislature, which new assessment was not possible under the facts of the present case. In *Verdery* v. *Dotterer*, 69 *Ga.* 194, 198, the court merely dealt with the question of whether a tax sale divests the lien of a mortgage. The fact that it does throws no light on whether such a sale would convey any more than a life estate. Movants rely upon the language that "Taxes due the State are not only against the owner, but against the property also, and that without reference to judgments, mortgages, sales, transfers, or incumbrances of whatsoever nature or effect. The only concern as to an owner at all is merely to know against whom the assessment is to be made, while the tax itself and the lien therefor is against the property. The State's lien for taxes overrides all others, and follows the property into the hands of whomsoever it may go." But we have shown that when it is sought to enforce a lien, the lien's vitality is wrapped up in the execution; and if the property is sold, the lien is thereby foreclosed. Movants quote from *Stokes* v. *State*, 46 *Ga.* 412, 413 (12 Am. R. 588), as follows: "It has been said by a judge of the United States court that 'the power of taxation is a sovereign power, and a branch of the power of eminent domain.' Georgia expressly retains this power over all property in the State, and follows the property for the payment of her taxes in whosesoever hands found." This general statement throws no light on the concrete question raised in the present case, for the elucidation of which we think the language of the Supreme Court of the United States quoted in the opinion rendered by this court may be more helpfully consulted.

The question decided in the first division of the opinion in *Austell* v. *Swann*, 74 *Ga.* 278, 281, was whether or not an apportionment of annual taxes paid by a life-tenant upon dower land could be allowed between the life-tenant and the reversioners, upon any principle of law or equity. A demurrer to the petition was sustained. Movants quote the following: "It is contended, as we think with irresistible force, that a neglect to pay the burdens

imposed by law on the property during the term would be a want of such ordinary care as a prudent person should exercise for its protection and preservation, and would tend to divest the title to the fee by exposing it, or a portion of it, to sale to raise the taxes levied on it." What was said as to divesting the title to the "fee", was, of course, obiter. There is nothing in the statement that affords authority for the contention made by the movants. It only shows a *right* which a remainderman has—to cause a forfeiture for waste. We are also cited to *Thomas* v. *Lester,* 166 *Ga.* 274, (142 S. E. 870), from which the following is quoted: "As the plaintiff did not acquire a valid transfer of the tax fi. fa., he is unable to enforce the collection thereof by levy and sale; and for this reason there is no adequate and complete remedy at law. To enforce his rights he has to resort to equity and the doctrine of subrogation, which rests upon principles of equity and justice." Here is a case where equity is in its proper sphere or jurisdiction of dealing with the matter of subrogation. Movants say that "this court upheld the proposition that the collection of taxes out of the land can be accomplished by resort to equity when the execution can not be levied for such collection." We do not think the court so held. It did not pass upon the question of whether or not the tax could be collected by a court of equity. It merely gave by subrogation whatever right was inherent in the execution. We find nothing in the briefs contrary to the opinion already rendered. Moreover, the Code of 1933, § 92-7901, provides: "No replevin shall lie, nor any judicial interference be had, in any levy or distress for taxes under the provisions of this Code, but the party injured shall be left to his proper remedy in any court of law having jurisdiction thereof." That section has been the law of Georgia since 1804 (Cobb, 1051), and has appeared in all the Codes. It represents the declared policy of this State, and has been construed to mean that a court of equity will not interfere with tax officials, leaving the injured party to his statutory remedies, such as claim and illegality. While this section is not here mentioned as decisive of the question of the right of the State to resort to equity, it shows the policy of the State, and on principle should be applied, as far as possible, to both sides in controversies over the payment of taxes.

The motion for rehearing is denied.

RUSSELL, Chief Justice. Upon motion to reconsider the denial

of the motion for rehearing, I wish to state that I agree with the other members of the court, upon my understanding that we are not holding that there is no remedy.