301 Ga. 653
FINAL COPY

S17A0076. CLAYTON COUNTY v. CITY OF COLLEGE PARK et al.

BOGGS, Justice.

In this case involving the taxation of alcoholic beverages at Hartsfield-Jackson Atlanta International Airport (the "Airport"), Clayton County appeals from the trial court's order denying its motion for judgment on the pleadings and granting the motion for partial summary judgment filed by the City of College Park. In seeking a judgment on the pleadings, Clayton County asserted, among other things, that the City of College Park's claims were barred by sovereign immunity. For the following reasons, we vacate the judgment and remand this case for further consideration of that issue.

The Airport, which is owned and operated by the City of Atlanta, is located primarily within Clayton County (the "County"). Of the many businesses located within the Airport, some are located in the unincorporated sections of the County while other businesses are located in the County within

the incorporated limits of the City of College Park (the "City"). In its complaint, the City asserts that since the 1983 enactment of OCGA § 3-8-1 (regulation and taxation of alcoholic beverages at public airports), it has not been receiving the proper amount of alcoholic beverage taxes to which it is entitled, and that the County improperly infringed on its authority to tax by instructing vendors to remit to the County 50% of the taxes due from the sale of alcohol in those portions of the Airport located within the City limits.

The City and County disagree on the interpretation of OCGA § 3-8-1 (e) in light of the articles of the Georgia Constitution relating to the taxation power of counties and municipalities. The City asserts that, pursuant to OCGA § 3-8-1 (e), only it has authority to levy and collect taxes on the sale or use of alcoholic beverages within the corporate limits of the City, while the County can only levy and collect those taxes in the unincorporated areas of the County, and that within these parameters, the parties are then entitled to an equal division of all of the alcoholic beverage tax proceeds collected. The County asserts that OCGA § 3-8-1 (e) can only be construed to provide that the County is entitled to 50% of all alcohol tax revenues derived from within the City and 100% of the tax

revenues derived from the unincorporated areas of the County.[1]

When the parties could not resolve their dispute, the City filed a complaint naming as defendants the County and two businesses that operate within the Airport, Mack II, Inc. and General Wholesale Company (the "taxpayer defendants"). The complaint sought an interlocutory and permanent injunction against the County (as well as the taxpayer defendants), and a declaratory judgment as to the City's and County's division and collection of alcoholic beverage taxes, as well as the taxpayer defendants' payment of those taxes. The complaint also asserted claims against the County for an accounting, unjust enrichment, attorney fees, and damages. The taxpayer defendants filed a counterclaim for interpleader against the City, a cross-claim for interpleader against the County, and a petition for declaratory judgment.[2]

---

[1] The parties do not argue that OCGA § 3-8-1 is unconstitutional "as written." Although the County states on page 1 of its brief that "OCGA § 3-8-1 (e) is violative of Art. IX, Sec. IV, Par. I (b) (2) of the Georgia Constitution of 1983," in the trial court below it argued only that the construction of OCGA § 3-8-1 (e) in the manner asserted by the City would be unconstitutional. And during oral argument before this Court, the County affirmed that it was not challenging the constitutionality of the Code section. In any event, the trial court made no ruling with regard to the constitutionality of OCGA § 3-8-1 (e). The City argues that the County infringed upon its taxation power under the State Constitution.

[2] Taxpayer Mack II, Inc. also filed a counterclaim against the City for attorney fees and a cross-claim for contribution and indemnity against the County.

The County filed a motion for judgment on the pleadings, asserting that the City's complaint and the taxpayer defendants' cross-claims fail to state a claim and are barred by sovereign immunity, laches, OCGA § 36-1-4 ("A county is not liable to suit for any cause of action unless made so by statute"), and OCGA § 36-11-1 (claims against counties must be presented within 12 months after they accrue or become payable). The City moved for partial summary judgment on its claims for declaratory judgment.

Following a hearing, the trial court denied the County's motion for judgment on the pleadings, finding that sovereign immunity does not apply to the City's claims or the taxpayer defendants' cross-claims for indemnity and contribution,[3] that the doctrine of laches does not bar the City's claims, and that to the extent the statute of limitation in OCGA § 36-11-1 applies, "it would merely limit the time window or amount of College Park's damages" and not foreclose recovery altogether.[4] The court granted the City's motion for partial summary judgment on the declaratory judgment counts, finding that the

---

[3] The trial court indicated that it would address the taxpayer defendants' interpleader requests in a separate order.

[4] The trial court made no ruling specifically with regard to the County's argument that OCGA § 36-1-4 bars the City's claims and the taxpayer defendants' cross-claims.

3

Alcoholic Beverage Code, OCGA § 3-3-1 et seq., permits the City to impose alcoholic beverage tax only within its municipal limits and the County to impose such a tax only in the unincorporated areas of the County, that neither can impose and collect alcoholic beverage taxes within the other's taxing jurisdiction, and that the taxpayer defendants must submit tax monies only to the entity authorized to collect the funds. The court found further that once the City and the County have exercised the power to impose and collect taxes within these guidelines, OCGA § 3-8-1 (e) requires that they then remit to the other half of the collected proceeds.[5]

The County now appeals, asserting several grounds of error in the trial court's denial of its motion for judgment on the pleadings and its grant of the City's motion for partial summary judgment on the claims for declaratory relief.

1. The County first argues that the trial court erred in denying its motion

---

[5] In its Fourth Amended Complaint, the City added an inverse condemnation claim against the County, and a mandamus claim against Jeffrey E. Turner (Chairman of the Clayton County Board of Commissioners), Ramona Thurman Bivins (Chief Financial Officer of Clayton County), and Patrick Ejike (Director of Clayton County's Community Development Department), in their official capacities. The defendants filed an answer to this complaint and a supplemental motion for judgment on the pleadings on the same day as the hearing on the motion for partial summary judgment and the original motion for judgment on the pleadings, but it appears that the trial court did not consider and made no ruling with respect to these added claims. Those claims therefore remain pending.

4

for judgment on the pleadings and in granting the City's motion for partial summary judgment because it is entitled to sovereign immunity from suit. The City argues here, as it did below, that sovereign immunity does not apply to its claims. Importantly, for purposes of our analysis, the City couches its opposition to the application of sovereign immunity in terms of whether the doctrine bars claims regarding constitutional violations, an issue which, at the time, had not been directly addressed by this Court. The trial court agreed with the City that sovereign immunity does not bar its claims, ruling as follows:

> The Court has carefully considered the law on sovereign immunity, including the recent opinions that are cited by Clayton County. SJN Properties v. Fulton County Board of Assessors, 296 Ga. 793 [770 SE2d 832] (2015); Department of Natural Resources v. Center for a Sustainable Coast, Inc., 294 Ga. 593 [755 SE2d 184] (2014); Olvera v. Regents of the University System of Georgia, 331 Ga. App. 392 [782 SE2d 436] (2015). The Court finds sovereign immunity does not apply to College Park's claims or the Taxpayer Defendants' cross-claims.

None of the cases the trial court cited involved constitutional claims, but following the trial court's ruling and while this appeal was pending, we decided Lathrop v. Deal, 301 Ga. 408 (801 SE2d 867) (2017), squarely addressing whether sovereign immunity bars a claim involving the alleged violation of the Constitution other than a takings claim for just compensation. We concluded

5

that such a claim is barred and reiterated that the State and its officials in their official capacities cannot be sued without consent. Id. at 444 (IV). The trial court's holding that sovereign immunity did not apply for the reason argued by the City is erroneous in light of Lathrop.

2. However, as discussed at oral argument of this case, there is a threshold question of whether sovereign immunity applies at all in suits between political subdivisions of the same sovereign (like the City and the County), a question that the trial court did not address and the parties have not adequately briefed. It is a complex and important question, and one that we are reluctant to address in the first instance without affording the trial court an opportunity to consider the question and without complete briefing by the parties. While we have decided many cases involving claims between political subdivisions,[6] the application of sovereign immunity was not raised in those cases. We have not

---

[6] See, e.g., Fulton County v. City of Atlanta, 299 Ga. 676 (791 SE2d 821) (2016) (dispute involving annexation of property); Fulton County v. City of Sandy Springs, 295 Ga. 16 (757 SE2d 123) (2014) (dispute involving maintenance of detention ponds); Turner County v. City of Ashburn, 293 Ga. 739 (749 SE2d 685) (2013) (dispute involving local option sales tax); City of Decatur v. DeKalb County, 289 Ga. 612 (713 SE2d 846) (2011) (breach of intergovernmental sales tax agreement); City of Decatur v. DeKalb County, 284 Ga. 434 (668 SE2d 247) (2008) (dispute over method of calculating tax revenue); see also City of Waycross v. Pierce County Bd. of Commrs., 300 Ga. 109 (793 SE2d 389) (2016) (dispute involving water and sewer services in annexed area).

previously considered the difficult question of whether sovereign immunity applies as between governments, and other states appear to have approached the question in different ways. To permit a more thorough consideration of this difficult question, we remand for the trial court to address it, with the benefit of full briefing, including briefing by amici curiae with an interest in this issue.[7] We do not foreclose, however, the possibility that other rulings by the trial court or positions taken by the parties below may suffice to resolve some or all of the claims and counterclaims presented in this suit without the need to pass upon

---

[7] In deciding whether sovereign immunity applies at all in suits between political subdivisions (and whether the answer varies based on which political subdivision is the plaintiff and which is the defendant), considerations include, among other things: (1) the extent to which sovereign immunity at common law was understood (in Georgia specifically and in traditional English and American law more generally) to apply only in suits against the sovereign *by* citizens (as opposed to suits *by* subdivisions and other instrumentalities that are themselves creations of the sovereign); (2) the extent to which political subdivisions could sue one another at common law, and whether that depended on the nature of the subdivision (i.e., a county, a city, or some other entity); (3) the nature and extent of the derivative sovereign immunity afforded political subdivisions under Article I of the Constitution of 1983, as well as the nature and extent of the governmental immunity afforded political subdivisions under Article IX (to the extent, if any, that they are not coextensive), in light of the constitutional text, history, and precedents addressing each of those constitutional provisions; (4) the nature of the *constitutional* relationships among the State of Georgia itself, its counties, and its cities, including the extent to which those relationships may have changed over time (with the constitutional grant of home rule, for instance); and (5) the extent to which the General Assembly has by law indicated that disputes between political subdivisions ought to be resolved by courts, on the one hand, or by a political or administrative process, on the other. See, e.g., OCGA § 36-1-3.

this complex and important question.

3. We therefore vacate the judgment and remand this case for further consideration of the applicability of sovereign immunity. Because that issue could affect the claims pending below, we do not address the County's remaining enumerations of error.

<u>Judgment vacated and case remanded.  All the Justices concur.</u>

Decided June 30, 2017.

Taxation. Fulton Superior Court. Before Judge Newkirk.

<u>Carothers & Mitchell, Richard A. Carothers, Thomas M. Mitchell, Amy</u>

B. Cowan, Michael E. Hobbs; Christie C. Barnes, for appellant.

Fincher Denmark & Minnifield, Steven M. Fincher, Winston A. Denmark, Emilia C. Walker, Eugene P. Smith, Jr., for City of College Park.

Wilson, Brock & Irby, Larry M. Dingle, Kyler L. Wise; Quirk & Quirk, Neal J. Quirk, Kathryn E. Baird, for General Wholesale Company and Mack II, Inc.