305 Ga. 144
FINAL COPY

S17G2011. BELLSOUTH TELECOMMUNICATIONS, LLC et al. v. COBB COUNTY et al.

PETERSON, Justice.

Cobb and Gwinnett Counties have sued telephone companies for their failure to collect and remit to the Counties a charge imposed on subscribers to offset the cost of 911 services. The telephone companies have raised various defenses to the Counties' suits, including that the 911 charge is a tax that the Counties are not allowed to collect by a lawsuit like this one. The trial court rejected that argument and allowed the cases to proceed, but the Court of Appeals vacated that aspect of the trial court's ruling and remanded because further development of the record was needed to determine whether the charge is a tax. We conclude, however, that the charge is a tax regardless of more factual development, and we conclude that the Counties lack legal authority to collect that tax in this lawsuit. We reverse.

This case finds its roots in the Georgia Emergency Telephone Number 911 Service Act, OCGA § 46-5-120 et seq. ("the 911 Act"), originally enacted

in 1977, see Ga. L. 1977, p. 1040.[1] The 911 Act's purpose was to establish a statewide 911 system. OCGA § 46-5-121 (a). The statute authorizes local governments operating a 911 system to impose a monthly 911 charge ("the 911 charge") on each telephone service that is or would be served by the 911 system.[2] OCGA § 46-5-133 (a). The version of the statute in effect when this litigation was filed capped the charge at $1.50 per month, per telephone service provided. OCGA § 46-5-134 (a) (1) (A) (2012).[3]

Telephone companies are intermediaries in the statutory scheme. The statute provides that "[e]ach service supplier shall, on behalf of the local government, collect the 9-1-1 charge from those telephone subscribers . . . ." OCGA § 46-5-134 (a) (1) (B). Telephone companies are entitled to retain an

[1] In 2018, shortly after we granted certiorari in this case, a version of the statute containing significant amendments throughout was signed into law, becoming fully effective on January 1, 2019. See Ga. L. 2018, pp. 689, 714, § 4-1. None of those amendments apply to the claims in this case, which largely relate to 911 charges the Counties argue should have been collected prior to the filing of these lawsuits in December 2015 and January 2016.

[2] "Telephone service" is defined as "any method by which a 9-1-1 emergency call is delivered to a public safety answering point." OCGA § 46-5-122 (16.1) (A) (2019); see also OCGA § 46-5-122 (16.1) (2012) (same).

[3] The amended version of the statute provides that the monthly charge "shall" be $1.50 absent a reduction designed to avoid excessive accumulation of unexpended revenues. OCGA § 46-5-134 (a) (1) (A) (i), (d) (4) (2019).

2

administrative fee on amounts collected. OCGA § 46-5-134 (d) (1). At the time this lawsuit was filed, the statute provided that local governments could initiate a "collection action." OCGA § 46-5-134 (b) (2012). Although the statute did not provide expressly against whom that collection action could be brought, in that same subsection it provided that "[e]very telephone subscriber in the area served by the emergency 9-1-1 system shall be liable for the 9-1-1 charges and the wireless enhanced 9-1-1 charges . . . until it has been paid to the service supplier" and that "[a] service supplier shall have no obligation to take any legal action to enforce the collection of the 9-1-1 charge or wireless enhanced 9-1-1 charge." Id. The statute also provided that local governments could audit the telephone companies with respect to the collection and remittance of the 911 charge. See OCGA § 46-5-134 (d) (4) (2012).[4]

The Counties sued Bellsouth Telecommunications, LLC and Earthlink,

---

[4] The 2018 amendments created the Georgia Emergency Communications Authority ("the Authority"), comprising all local governments. See Ga. L. 2018, pp. 689, 691, § 1-1 (OCGA § 38-3-182 (a) (2018)). The amendments shifted to the Authority the right to bring collection actions and audit service providers and clarified that collection actions may be initiated against subscribers. Id. at p. 697, § 1-1 (OCGA § 38-3-189 (a) (1) (2019)), p. 707, § 2-12 (OCGA § 46-5-134 (b) (2019)). The Authority also is now authorized to bring an administrative action for a civil penalty against telephone companies that fail to bill the monthly 911 charges. Id. at pp. 694-695, 697-698, § 1-1 (OCGA §§ 38-3-182 (l), 38-3-189 (c) (2019)).

Inc., Earthlink, LLC, Deltacom, LLC, and Business Telecomm, LLC (collectively, "the Telephone Companies") in two separate complaints. The complaints as amended allege that the Telephone Companies had underbilled two classes of customers.[5] Together the two complaints claim estimated damages of more than $38.9 million, allege violations of the 911 Act and common law theories of recovery (including breach of fiduciary duty, fraud, and negligence), and seek to enforce the 911 Act's audit provision.

The Telephone Companies moved to dismiss the Counties' complaints, arguing that the Counties do not have a right of action to enforce the 911 Act. The Telephone Companies also argued that a common law claim was not available because the 911 Act imposes a tax, and a common law action for recovery of taxes does not lie where a statute provides remedies for collections of taxes that do not include an action at law. The trial court denied the motion. It held that the 911 charge is a fee, not a tax, and that the 911 Act, read in

---

[5] The Counties allege the Telephone Companies did not bill customers that purchased services capable of carrying multiple simultaneous calls over a single physical line for every exchange access line available over that line and did not bill Voice Over Internet Protocol (VoIP) customers for every 10-digit telephone number those customers obtained.

4

conjunction with OCGA §§ 51-1-6 and 51-1-8,[6] provided the Counties with a right of action. The court also rejected the Telephone Companies' other arguments as to the Counties' common law claims.

On interlocutory review, the Court of Appeals affirmed in part, reversed in part, and vacated in part. Bellsouth Telecommunications, LLC v. Cobb County, 342 Ga. App. 323, 323-324 (802 SE2d 686) (2017). The Court of Appeals held that the trial court erred in finding that the 911 Act provided an implied right of action for a violation of the statute. Id. at 326-328 (1). But the Court of Appeals agreed that OCGA §§ 51-1-6 and 51-1-8 allow the Counties to pursue claims against the Telephone Companies based on the companies' failure to comply with the 911 Act. Id. at 328-330 (2). The Court of Appeals vacated the trial court's finding that the 911 charge is a fee as a matter of law, remanding for further consideration of that issue following development of a record as to whether the Counties provide a 911 service that differs from that of

---

[6] OCGA § 51-1-6 provides, "When the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby." OCGA § 51-1-8 provides, "Private duties may arise from statute or from relations created by contract, express or implied. The violation of a private duty, accompanied by damage, shall give a right of action."

5

other counties. Id. at 330-333 (3).[7]

We granted the Telephone Companies' petition for certiorari, directing the parties to address several questions, including whether the 911 charge is more properly characterized as a tax or a fee. We conclude that the charge is a tax, and that the 911 Act does not give the Counties a right of action to collect that tax from the Telephone Companies. We reverse the Court of Appeals and remand with instructions for the Court of Appeals to direct the trial court to dismiss the Counties' actions.

1. "A tax is an enforced contribution exacted pursuant to legislative authority for the purpose of raising revenue to be used for public or governmental purposes, and not as payment for a special privilege or a service rendered." Gunby v. Yates, 214 Ga. 17, 19 (102 SE2d 548) (1958); see also McLeod v. Columbia County, 278 Ga. 242, 244 (2) (599 SE2d 152) (2004) ("A

---

[7] Now-Chief Judge Dillard wrote a concurrence, saying that further evidentiary proceedings on that point were unnecessary, because the court previously held in Fulton County v. T-Mobile South, LLC, 305 Ga. App. 466 (699 SE2d 802) (2010), that the 911 charge is a tax as a matter of law, and because, at any rate, the question of whether the charge is a tax was not dispositive of the Counties' claims; the Counties are "not suing a taxpayer for the recovery of taxes" but instead "assert a *statutory claim* under OCGA § 51-1-6 for a violation of a legal duty, as well as common-law claims to recover *damages* resulting from alleged negligence, fraud, and breach of fiduciary duty." Bellsouth Telecommunications, 342 Ga. App. at 341-343 (3) (Dillard, P. J., concurring fully and specially) (emphasis in original).

charge is generally not a tax if its object and purpose is to provide compensation for services rendered."). Generally, we have considered four criteria in considering whether a charge is a tax, which we have defined as: (1) a means for the government to raise general revenue based on the payer's ability to pay (i.e., income or ownership of property), without regard to direct benefits that may inure to the payer or to the property taxed; (2) mandatory; (3) not related to the payer's contribution to the burden on government; and (4) not resulting in a "special benefit" to the payer different from those to whom the charge does not apply. See McLeod, 278 Ga. at 244-245 (2); see also Homewood Village, LLC v. Unified Govt. of Athens-Clarke County, 292 Ga. 514, 515 (1) (739 SE2d 316) (2013).[8] In contrast, fees are a charge for a particular service provided, based on the payer's contribution to the problem. McLeod, 278 Ga. at 244 (2).

---

[8] The Counties argue that the Court of Appeals erred in T-Mobile South by assuming that for the 911 charge to be a fee, those who pay it must receive a special benefit "not received by others." 305 Ga. App. at 471 (2). The Counties seize on language in our decision in McLeod to the effect that "the trend seems to be in favor of upholding fees that confer intangible benefits on both those who are assessed and those who are not." 278 Ga. at 244 (2) (quoting Avi Brisman, Considerations in Establishing a Stormwater Utility, 26 S. Ill. U. L. J. 505, 522 (2002)). But in concluding that the stormwater utility charge in that case was not a tax, we clearly relied on the fact that the properties charged for stormwater services "receive a *special benefit* from the funded stormwater services[.]" Id. at 245 (2) (emphasis added); see also Homewood Village, 292 Ga. at 515 (1) (quoting McLeod's "special benefit" language in explaining why the stormwater utility charge before the Court also was a fee, not a tax).

Applying the four factors set forth above, we conclude that the 911 charge is a tax as a matter of law. First, as the Counties note, it is true that the 911 Act restricts the use of the funds to pay specific communications costs enumerated in the statute. See OCGA § 46-5-122 (11); OCGA § 46-5-134 (f); OCGA § 46-5-134.2 (j) (4) (2019); see also OCGA § 46-5-134.2 (j) (5) (2012). But although the 911 charge raises funds for a dedicated purpose, it is assessed based on the extent to which a person or business subscribes to telephone service, not the extent to which a person can or in fact does summon emergency services. It is not charged to persons who have access to phone service paid for by someone else, such as a house phone in a hospital lobby or a homeless shelter. And the assessment does not depend on whether a person actually calls 911. Moreover, requiring a governmental charge to be deposited in a special purpose fund does not make it not a tax. See Gunby, 214 Ga. at 20 (charge for marriage licenses deposited in a restricted purpose retirement fund is a tax). Many charges explicitly labeled as taxes are restricted to a particular purpose. See Ga. Const. Art. III, Sec. IX, Par. VI (setting forth various exceptions to the rule that "no appropriation shall allocate to any object the proceeds of any particular tax or fund or a part or percentage thereof"); Ga. Const. Art. VIII, Sec. VI, Par. I (b)

8

(local school taxes); OCGA § 48-8-121 (a) (1) (Special Purpose Local Option Sales Taxes).[9]

The Counties next argue that the 911 charge is not mandatory because people may opt to not receive telephone service and avoid the charge. But the charge is mandatory in the way we have used that term in determining whether something is a tax.[10] In considering whether a charge is mandatory for this purpose, we have considered not whether someone may theoretically continue to live a lawful existence without using a particular service at all, but whether someone may obtain that service by way of an alternate route that avoids paying the charge. See McLeod, 278 Ga. at 245 (2) (utility charge not a tax because property owners could reduce the amount of the charge by creating and maintaining private stormwater management systems, and ordinance did not permit imposition of a lien directly against the property of those who fail to pay the charge); Luke v. Ga. Dept. of Natural Resources, 270 Ga. 647, 648 (1) (513

---

[9] Given the breadth of these examples, the Counties' attempt to distinguish SPLOST and school taxes as exceptions to a general rule on the ground that they are authorized by the Georgia Constitution and on the ground that they are (directly or indirectly) paid by renters as well as property owners, is unavailing.

[10] Even income and sales taxes would not be mandatory under the Counties' standard, as they could be avoided by not earning income or making purchases.

9

SE2d 728) (1999) (fee for participation in underground storage tank trust fund not a tax given that storage tank owner may demonstrate evidence of financial responsibility as required by statute by means other than participation in fund). Here, people cannot opt out of the emergency services system by subscribing to an alternative phone service, so the charge is mandatory.

Although the Counties suggest that we have held that a charge — in particular, a solid waste disposal charge — may be a fee even where a payer is bound to pay it despite declining the service provided, the case they cite did not address that question. See Mesteller v. Gwinnett County, 292 Ga. 675, 678 (4) (740 SE2d 605) (2013) (rejecting property owner's argument that solid waste fee is an unlawful tax because garbage collection services were carried out by private companies, because Court previously has held such charges are not taxes). And our prior decisions deeming garbage collection charges to be fees, not taxes, also do not discuss property owners' ability to opt out of the services. See Levetan v. Lanier Worldwide, Inc., 265 Ga. 323, 324-325 (2) (454 SE2d 504) (1995) (sanitation assessments are not taxes within meaning of state Constitution and thus need not be collected by county tax commissioner); Crestlawn Memorial Park, Inc. v. City of Atlanta, 235 Ga. 194 (219 SE2d 122)

10

(1975) (sanitary assessment not a tax for which plaintiff could obtain an exemption for the cemetery he operated; Court noted finding that leaves falling into street from cemetery property are cleaned up by the city but did not discuss plaintiff's ability to opt out of city sanitation services).[11]

Finally, there is no relationship between the obligation to pay the charge and the burden the payer places on emergency services systems in Georgia, and those who pay the charge receive no special access to emergency services. A person who pays the charge year after year might well never make a 911 call on the associated telephone line, while another person may use a public phone or borrowed phone to summon emergency services (or others may summon emergency services on their behalf) on a regular basis. Although a person with active telephone service may be able to dial 911 more easily than one who does

---

[11] Although in one case we discussed property owners' ability to opt out of solid waste removal services, we declined to decide in that case whether the charge for such services was a tax or a fee. Mayor & Aldermen of Milledgeville v. Green, 221 Ga. 498, 500 (145 SE2d 507) (1965) ("[The Court of Appeals] finds, and we think erroneously, that the city could not require the residents to involuntarily accept the city's removals and pay a fee therefor. There is no difference in substance in compelling the individual under penalty to remove it or pay the city a fee for removing it. To say such payment is voluntary is to ignore the compulsion of the penalty as the alternative. Capable counsel have cited numerous cases that attempt to draw a distinction between a 'tax' and a 'fee'. We think it futile to engage in extended discussion of that distinction."). Notwithstanding this decision, our more recent cases have made clear that this distinction matters.

not, emergency services are available to all within a given emergency services area.[12] Moreover, a visitor to the state can easily dial 911 and summon emergency service on her cell phone (or a public or borrowed phone), even though she is not subject to the charge. See Fulton County v. T-Mobile South, LLC, 305 Ga. App. 466, 471 (2) (699 SE2d 802) (2010) ("Here, those who pay the [911] charge — whether T-Mobile or its customers — receive no benefit not received by the general public, because all members of the public may access the [911] system. As such, the charge is a tax."). Thus, we conclude based on the relevant factors that the 911 charge is a tax.[13]

---

[12] Although there was some discussion at oral argument and in post-argument briefing about whether an "inactive" cell phone can successfully summon emergency services through the 911 system, our resolution of this case does not require resolution of that factual question.

[13] We note that our analysis also is consistent with most other jurisdictions to have considered the question. See Bay Area Cellular Tel. Co. v. City of Union City, 162 Cal. App. 4th 686, 695-699 (Cal. Ct. App. 2008) (911 charge a tax given that it "inures to the benefit of the public as a whole, not to any particular group within the public," and "is not charged for *use* of the 911 system, but for *access* to the system, whether or not a resident ever places an emergency call" (emphasis in original)); Phone Recovery Svcs., LLC v. Qwest Corp., 919 NW2d 315, 323-325 (Minn. 2018) (911 charge falls under statutory definition of tax; "nothing in these statutorily imposed surcharges allows consumers, service providers, or the State to tie the amount of the fee to a consumer's level (or lack) of use of the statewide 911 system"); Kessler v. Hevesi, 45 AD3d 474, 475 (N.Y. App. Div. 2007) (911 wireless surcharge is a tax, because "[t]he benefits flow to the general public because everyone — not just wireless telephone users — benefits from the enhancements to 911 service"); see also Phone Recovery Svcs., LLC v. Verizon of New England, 102 NE3d 968 (Mass. 2018) (concluding that plaintiff lacked standing to bring qui tam action that lower court had dismissed on grounds that the 911 charge is a tax); Tracfone Wireless, Inc. v. Comm. on

The Counties argued before the Court of Appeals that, even if they must show that those who pay the 911 charge receive a "special benefit" in order for it to be a fee, they would be able to show as much when evidence is presented at the summary judgment or trial stages of the case. Specifically, the Counties argued that 911 services vary from county to county, such that those who do not have a wireless telephone or landline billing address within one of the Counties cannot take advantage of certain "enhanced" services, such as the dispatcher having near-immediate access to the location of the caller. Thus, they argued, visitors to the Counties and those whose telephone billing address is not within one of the Counties' service areas do not receive the same benefit as those who do pay a 911 charge to one of the Counties. Based on these arguments, the Court of Appeals concluded that further discovery was required to resolve the question

State Emergency Communications, 397 SW3d 173, 175 n.3 (Texas 2013) (accepting parties' treatment of 911 charge as a tax, as "no regulatory regime is created that regulates the consumers of wireless services"); but see T-Mobile South, LLC v. Bonet, 85 S3d 963, 982-985 (Ala. 2011) (911 charge is not a tax because it "is based on provision of telephone service, and is used to fund a specific service" and thus "is not a revenue-raising measure" (citation and punctuation omitted)); Phone Recovery Svcs., LLC v. Verizon Pa., Inc., 2016 WL 2638829, at *3-*8 (Ct. C. P. of Pa., Civil Div., Case No. GD-14-021671, decided April 21, 2016) (911 charge is a fee given that payments are deposited into "special fund").

13

of whether the 911 charge is a tax or a fee.[14] Bellsouth Telecommunications, 342 Ga. App. at 332-333 (3). But this frames the benefit at issue wrongly. At the time this lawsuit was filed, the 911 Act capped the 911 charge at $1.50 statewide, irrespective of the level of service provided in a particular county. OCGA § 46-5-134 (a) (1) (A) (2012). And the Act specifically provides that a 911 charge imposed by a local government  "must be uniform" and "may not vary according to the type of telephone service used[.]" OCGA § 46-5-133 (a). The Court of Appeals erred in concluding that further discovery is required to determine whether the 911 charge is a tax or a fee.  See Bay Area Cellular Tel. Co. v. City of Union City, 162 Cal. App. 4th 686, 691, 699 (Cal. Ct. App. 2008) (911 charge a tax even though city elected to provide "enhanced" services such as automatic location identification).

The Counties suggest that the 911 charge cannot be a tax because, if it is, the 911 Act's provision for collection by telephone service suppliers is invalid. They cite OCGA § 48-5-233, which provides that "[a]ll taxes levied for county purposes . . . shall be collected by the tax commissioner or tax collector." See

---

[14] Arguing before this Court, the Counties do not focus on any alleged differences between 911 services available to those whose have billing addresses within the Counties and those who do not, relegating their argument based on such differences to a footnote.

also <u>Levetan</u>, 265 Ga. at 324-325 (2). And they say they are aware of no general revenue "tax" provision authorizing private companies to take a fee of the sort authorized by the 911 Act, see OCGA § 46-5-134 (d) (1), from any portion of a "tax" that they collect. But even assuming the 911 charge is a tax "levied for county purposes," OCGA § 46-5-134 (a) (1) (B) clearly does authorize telephone service providers to collect the 911 charge, and OCGA § 46-5-134 (d) clearly does authorize retention of an administrative fee when they do so. Where two statutes are in conflict, the later-enacted statute prevails over the one enacted earlier, and the more specific statute governs over the more general one. See <u>Glinton v. And R, Inc.</u>, 271 Ga. 864, 866-867 (524 SE2d 481) (1999). Here, the 911 Act was enacted long after the original precursor to the more general OCGA § 48-5-233, which was part of the 1860 Code. See 1860 Code § 491. To the extent that construing the 911 charge as a tax creates a conflict between certain provisions of the 911 Act and OCGA § 48-5-233, that is not a compelling reason to conclude that the 911 charge is instead a fee.

2. While maintaining that the 911 charge is not a tax, the Counties argue that they may pursue tort remedies to recover taxes even in the absence of express statutory authority. We disagree.

15

The power to tax is the power to destroy. See <u>McCulloch v. Maryland</u>, 17 U. S. 316, 427 (4 LE 579) (1819). Of course, it is not only the power to impose taxes at a particular rate that can be destructive; the method of tax collection can also be destructive. Because the power to levy and collect taxes is so great, that power may only be exercised as permitted by statutes enacted by the legislative branch. See Ga. Const. Art. VII, Sec. I, Par. III (a) ("All taxes shall be levied and collected under general laws and for public purposes only."). This structural requirement that both the levy and collection of taxes be done as prescribed by the legislature — like many other structural provisions of our Constitution — preserves liberty because legislators are accountable to the people more directly than bureaucrats or judges. As the United States Supreme Court observed in <u>McCulloch</u>, "[i]n imposing a tax the legislature acts upon its constituents." 17 U. S. at 428. For this reason, "[t]he matter of collecting taxes, in the absence of statutory provision therefor, is beyond the jurisdiction of the judicial [branch]." <u>Kirk v. Bray</u>, 181 Ga. 814, 821 (184 SE 733) (1935). Taxes cannot be collected through a court action absent some specific legislative provision authorizing such an action. Id. at 820-826 (trial court erred in decreeing state and county were entitled in equity to have their tax lien enforced against property in

16

question); see also <u>Farmers Bank of Forsyth v. Harrison</u>, 182 Ga. 623, 627-630 (186 SE 687) (1936) ("A most distinctive feature of the constitution of the United States and of this State is the division of the powers of government into three separate departments—executive, legislative, and judicial. It was designed and intended that one department should not usurp the ordinary functions of the others, but that all three should act in harmonious relation. So, when the legislature authorizes a tax for governmental purposes and provides an adequate remedy for its collection by administrative officers, the necessary intendment is that the collection of the tax is exclusively confided to that administrative department of the government.").

This rule applies to counties, as "[a] county is a mere political division of the State[,]" <u>Penick v. Foster</u>, 129 Ga. 217, 219 (58 SE 773) (1907), and "the burden is upon every political subdivision of the State which demands taxes from the people to show authority to exercise [the power to levy taxes] in the manner in which it has been imposed by a valid law of this State." <u>City of Atlanta v. Gower</u>, 216 Ga. 368, 370 (116 SE2d 738) (1960). Such authority must be "plainly and unmistakably granted by the State[.]" Id. (attorneys' lawsuit challenging city's tax on licensed professionals may proceed, as state

law on which city relies as authority for the tax is invalid).

Notwithstanding these principles, the Counties argue that even if the 911 charge is considered a tax, the Counties do not need express statutory authorization to recover the charge in a tort action. Citing Clayton County v. City of College Park, 301 Ga. 653 (803 SE2d 63) (2017), Ga. Power Co. v. City of Decatur, 179 Ga. 471 (176 SE 494) (1934), reversed sub nom Ga. R. & Elec. Co. v. Decatur, 295 U. S. 165 (55 SCt 701, 79 LE 1365) (1935), Coca-Cola Co. v. City of Atlanta, 152 Ga. 558 (110 SE 730) (1922), and Citizens and Southern Bank v. State of Ga., 151 Ga. 696 (108 SE 161) (1921), the Counties argue that they may pursue these actions because they are not trying to "levy taxes" on a taxpayer but instead are enforcing an intermediary's duty to collect the funds. The Counties are wrong.

Three of the cases cited predate Kirk and do not control this case for the reasons stated in Kirk. As we noted in Kirk, although we held in Coca-Cola Co. that the action was not subject to dismissal, it involved a "petition . . . brought for the purpose of discovery" that was "preliminary to an effort to collect taxes." Kirk, 181 Ga. at 824; see also Coca-Cola Co., 152 Ga. at 566 (2) ("This petition seeks no recovery of taxes, but is in aid of and ancillary to other proceedings to

18

be brought for that purpose."). We also have distinguished <u>Georgia Power Co.</u> as involving "a paving assessment rather than a tax[.]" <u>Kirk</u>, 181 Ga. at 824-825; see also <u>Ga. Power Co.</u>, 179 Ga. at 485 (1) (detailing city provision requiring railroad companies having tracks running along or across streets or other public spaces to pay certain paving and improvement costs).

The Counties rely heavily on <u>Citizens and Southern Bank</u>, wherein we upheld a trial court's refusal to dismiss a lawsuit by the state and a county over taxes owed by a liquidating bank. The suit sought to recover taxes that became due by the liquidating bank after a tentative agreement between it and the defendant bank was reached but before the transfer of assets took place. 151 Ga. at 696-697. Acknowledging that the suit could "not be maintained as one at law to collect taxes," we nonetheless said a court could "require the defendants, who are essentially trustees of the property misapplied, and who have misappropriated the funds of the selling bank, a part of which should have gone to the payment of these taxes, to respond to the injured party in a sum equal to the amount misappropriated." Id. at 702 (3). In <u>Kirk</u> we distinguished <u>Citizens and Southern Bank</u> as "a proceeding in equity to reach a particular fund, rather than to collect a tax[.]" <u>Kirk</u>, 181 Ga. at 826. And this case involves no claim

19

that the Telephone Companies have ever held money belonging to the Counties, in trust or otherwise; rather, the Counties complain in their lawsuits that the Telephone Companies never collected the funds from their customers in the first place.

As for our recent ruling in <u>Clayton County</u>, it considered no issue other than whether the city-plaintiff's claims against a county were barred by sovereign immunity, ultimately remanding the case for further consideration of that issue by the trial court. See 301 Ga. at 657 (3). Thus, even if the defendants in that case would have been properly characterized as "middlemen," rather than taxpayers,[15] our decision does not stand for the proposition that the city's lawsuit was authorized by statute. See <u>Gibson v. Gibson</u>, 301 Ga. 622, 625 (1) n.3 (801 SE2d 40) (2017) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." (citation and punctuation omitted)). In sum, the cases cited by the Counties do not undermine our conclusion that, if the 911 charge is a tax, the Counties must have express

---

[15] The Telephone Companies argue that the businesses the city also sued in <u>Clayton County</u> were taxpayers, not mere middlemen, but do not address whether the county defendant would have been properly characterized as a taxpayer.

20

statutory authorization to collect it through this action.

The 911 Act does not itself provide that express authorization. At the time these lawsuits were filed, the 911 Act provided that "[a] collection action may be initiated by the local government that imposed" the 911 charges, but described only the "telephone subscriber" as "liable" for the charge and provided that "[a] service supplier shall have no obligation to take any legal action to enforce the collection of the" charge. OCGA § 46-5-134 (b) (2012); compare OCGA § 48-8-35 (providing that any dealer who fails or refuses to collect sales and use tax "shall be liable for and shall pay the tax himself"). The Court of Appeals observed that the parties agreed "that the [911] Act does not contain an express right of action authorizing local governments to enforce the statute against telephone companies and service suppliers." Bellsouth Telecommunications, 342 Ga. App. at 326 (1). All three members of the Court of Appeals panel agreed that the 911 Act did not provide an implied right of action to the Counties against the Telephone Companies. Id. at 328 (1); id. at 333 (Dillard, P. J., concurring fully and specially). And the Counties did not file a petition for certiorari challenging any aspect of the Court of Appeals's ruling.

To the extent the Counties suggest that OCGA § 51-1-6 provides

sufficient explicit authorization for them to bring these suits even if the 911 charge is a tax, they are wrong. That general tort statute, which provides for recovery "[w]hen the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another," OCGA § 51-1-6, does not satisfy the Counties' burden to show that authority to bring this action has been "plainly and unmistakably granted by the State[.]" Gower, 216 Ga. at 370. The cases that they cite in support of their argument on this point do not involve the collection of taxes. See Wells Fargo Bank v. Jenkins, 293 Ga. 162 (744 SE2d 686) (2013) (rejecting argument that policy statement in federal banking statute set out sufficiently specific legal duty to support a state negligence claim under OCGA § 51-1-6 for misuse of confidential customer information); Central Anesthesia Assocs., P.C. v. Worthy, 254 Ga. 728 (333 SE2d 829) (1985) (medical malpractice decision not mentioning OCGA § 51-1-6). To the extent that the Counties argue that OCGA § 51-1-8 provides sufficient explicit authorization for them to bring these suits even if the 911 charge is a tax, that argument fails for the same reasons.

The Counties argue that, as "sovereign" government entities, they "'inherently' have all remedies not relinquished and must be allowed to pursue

22

a remedy *outside* the 911 Act to recover for damages suffered." They cite a host of scenarios in which, they say, statutes impose upon private parties duties to handle public money without also explicitly authorizing an action to recover for a breach of those duties, including the statute at issue in Clayton County that addresses allocation of tax proceeds collected on the sale, storage, and distribution of alcoholic beverages at the airport, see OCGA § 3-8-1. But as explained above, our decision in that case did not address the question of whether the city's lawsuit against a county and two vendors was authorized by statute. And with respect to the other scenarios cited by the Counties, they make no assertion that any of the charges in question is properly characterized as a tax.[16] Thus, the lack of an explicit statutory authorization of an action to recover for a breach of a duty to collect those monies says nothing about whether, if the 911 charge is a tax, there must be explicit statutory authorization for the Counties' lawsuit. Because the 911 charge is a tax, the Counties' lawsuits must

---

[16] The Counties point to agents who sell hunting and fishing licenses on behalf of the state, fees charged by trial court e-filing service providers, and those with duties to the judicial retirement system. We need not and do not reach any conclusions here as to whether any of those scenarios involves a tax, but note that, as pointed out by the Telephone Companies, such arrangements may give rise to a breach of contract action or other means of recourse that could not be characterized as a tax collection action.

23

be dismissed. To the extent the Court of Appeals suggested the lawsuits may proceed under OCGA §§ 51-1-6 and 51-1-8 even if the charge is a tax, see Bellsouth Telecommunications, 342 Ga. App. at 330-331 (3), the Court of Appeals erred.

Concluding that the 911 charge is a tax as a matter of law, and the Counties' lawsuits thus are precluded, we reverse the Court of Appeals. That court is directed to remand the case to the trial court with instructions to grant the Telephone Companies' motions to dismiss the Counties' claims for damages.[17]

Judgment reversed and case remanded with direction. Melton, C. J., Nahmias, P. J., Benham, Blackwell, Boggs, Bethel and Ellington, JJ., and Judge

---

[17] The Telephone Companies expressly did not appeal to the Court of Appeals the trial court's failure to dismiss the declaratory judgment action, so that claim remains unaffected by this appeal. The Telephone Companies did appeal the trial court's failure to dismiss the Counties' petition for accounting pursuant to the 911 Act's audit provision. The Court of Appeals "disagree[d] with the trial court's finding that the [911] Act provides an implied right of action to the Counties for the [Telephone Companies]' alleged failure to collect the proper amount of fees under the statute." Bellsouth Telecommunications, 342 Ga. App. at 328 (1). But this conclusion about whether the statute provides an implied right of action for damages against the Telephone Companies does not answer the question of whether the statute allows the Counties to bring a petition for accounting against the Telephone Companies, something the Court of Appeals did not address directly. To the extent the Counties still wish to pursue that claim, the Court of Appeals should address its viability on remand.

Thomas Brittan Hammond concur. Warren, J., not participating.

Decided February 18, 2019.

Certiorari to the Court of Appeals of Georgia — 342 Ga. App. 323.

Kilpatrick Townsend & Stockton, J. Henry Walker IV, John P. Jett, Adam H. Charnes; Bondurant, Mixson & Elmore, Frank M. Lowrey IV, Amanda K. Seals; Alston & Bird, Mark A. McCarty, Kara F. Kennedy; Kellogg, Hansen, Todd, Figel & Frederick, Scott H. Angstreich, Collin R. White, for appellants.

Barnes Law Group, Roy E. Barnes, John R. Bevis, Benjamin R. Rosichan; Harris Lowry Manton, Jeffrey R. Harris, Madeline E. McNeeley; Evangelista Worley, James M. Evangelista, David J. Worley; Penn Law, Darren W. Penn, for appellees.

Pierson Law, Holly A. Pierson; Robbins Ross Alloy Belinfante Littlefield, Joshua B. Belinfante; Kasowitz Benson Torres & Friedman, Michael E. Hutchins, David E. Spalten; Eversheds Sutherland (US), Jonathan A. Feldman, Maria M. Todorova; Kelly L. Pridgen, G. Joseph Scheuer, Larry W. Ramsey , Jr., Susan J. Moore, Rusi C. Patel, amici curiae.